UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DIANA M. OWENS,

    Plaintiff,

vs.                                                    Case No. 8:04-cv-1804-T-MSS

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.
_____/

## **ORDER**

Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42, United States Code, Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying claims for disability, disability insurance benefits, disabled widow's insurance benefits, and supplemental security income under the Act.

The Court has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.

I.      **Background**

A.      **Procedural History**

Plaintiff protectively filed applications for disability insurance benefits and supplemental security income on June 26, 2001. (T. 54-56). Plaintiff alleged an onset date of disability of August 28, 1997, due to neuropathy of the right hand and thumb, fibromyalgia, rheumatoid arthritis, and migraine headaches. (T. 64). Her applications were denied initially and on reconsideration. On September 19, 2002, Plaintiff had filed an additional application for disabled widow's benefits, which was escalated to the hearing level and consolidated with her earlier applications. (T. 13). Plaintiff requested a hearing, which was held on October 29, 2002, before Administrative Law Judge Ann Azdell (hereinafter referred to as the "ALJ"). (T. 426-51). In a decision dated March 28, 2003, the ALJ denied Plaintiff's claims for benefits. (T. 13-19). The Appeals Council denied review of the decision on June 23, 2004. (T. 3-4). This action for judicial review ensued.

B.      **Medical History and Findings Summary**

Plaintiff's medical history is set forth in the ALJ's decision. By way of summary, Plaintiff complained of uncontrollable high blood pressure, fibromyalgia, body pain, carpal tunnel syndrome, decreased grip in her right hand, neuropathy of the right hand, diabetes, depression, and anxiety.

At the hearing, Plaintiff presented the ALJ with medical records from Plaintiff's treating and examining physicians. After considering the evidence, the ALJ found

2

that although Plaintiff suffered from severe impairments including hypertension, obesity, diabetes mellitus, fibromyalgia, minimal osteoarthritis of the cervical and lumbar spine, a history of migraine headaches, a right hand injury with borderline carpal tunnel syndrome of the right wrist, and adjustment disorder with anxiety, she did not have an impairment or combination of impairments listed in or medically equivalent to one listed in Appendix 1, Subpart P, Regulations No. 4.  (T. 17).  The ALJ determined Plaintiff had the residual functional capacity to perform simple work-related activities with pushing, pulling, lifting, and/or carrying up to twenty pounds occasionally and up to ten pounds frequently; sitting, standing and/or walking about six hours each during an eight-hour workday; and occasional balancing, climbing, stooping, crouching, kneeling, and crawling. (T. 18, 447). Thus, the ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of unskilled, light work, and could perform her past relevant work as either an assembler or sales attendant. (T. 18-19).  The ALJ therefore concluded that Plaintiff was not disabled under the Act at any time through the date of her decision.  (Id.).

## II.     Standard of Review

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole. 42 U.S.C. §405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  If there is substantial evidence to support the

Commissioner's findings, this Court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

No similar presumption of validity attaches to the Commissioner's legal conclusions; rather the Court reviews the application of law *de novo*. See Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993). If an error of law was committed by the Commissioner, the case must be remanded to the Commissioner for application of the correct legal standard. McDaniel v. Bowen, 800 F.2d 1026, 1029-30 (11th Cir. 1986); Smith v. Heckler, 707 F.2d 1284, 1285 (11th Cir. 1983). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then a remand to the Commissioner for clarification is required. Jamison v. Bowen, 814 F.2d 585 (11th Cir. 1987).

Against this standard, Plaintiff challenges this decision citing 3 alleged points of error: (1) that the ALJ failed to articulate adequate reasons for discounting the credibility of Plaintiff's subjective complaints of pain, (2) that the ALJ failed to give proper weight to the statements of Plaintiff's treating physician, Dr. Alton, and (3) that the ALJ failed to give proper weight to the statements of Plaintiff's treating physician, Dr. Hart.

For the reasons that follow, the Court AFFIRMS the decision of the Commissioner.

III.     Discussion

    A.     **WHETHER THE ALJ ERRED IN FAILING TO ARTICULATE ADEQUATE REASONS FOR FINDING THE PLAINTIFF'S ALLEGATIONS OF SUBJECTIVE PAIN NOT COMPLETELY CREDIBLE.**

Plaintiff first contends that the ALJ erred by ignoring the three part analysis used to evaluate subjective complaints of pain and failed to correctly analyze the Claimant's complaints of pain. In response, the Defendant argues that the ALJ thoroughly weighed the evidence in making her credibility determination and specifically evaluated Plaintiff's subjective allegations regarding her pain. The Court upholds the ALJ's findings regarding Plaintiff's subjective reports of pain for the following reasons.

The standard for evaluating subjective evidence of pain in disability cases requires the ALJ to credit a claimant's subjective pain testimony if there is (a) evidence of an underlying medical condition <u>and</u> (b) either (1) objective medical evidence to confirm the severity of the alleged pain <u>or</u> (2) that the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. <u>Mason v. Bowen</u>, 791 F.2d 1460, 1462 (11th Cir. 1986)(emphasis added). This standard also applies to other subjective complaints. <u>Holt v. Sullivan</u>, 921 F.2d 1221 (11th Cir. 1991).

Under the alternate prong of the pain standard, subjective pain testimony which is supported by clinical evidence of a condition that can reasonably be

5

expected to produce the symptoms of which Plaintiff complains is itself sufficient to sustain a finding of disability.  This prong requires the ALJ to evaluate the credibility of a claimant's testimony as to pain and to articulate a reasonable basis for rejecting the testimony if it is rejected.  Sewell v. Bowen, 792 F.2d 1065, 1068 (11th Cir. 1986).  If the ALJ rejects a claimant's testimony regarding complaints of pain, he must articulate "explicit and adequate reasons" for doing so.  Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995).  Further, the articulated reasons for discrediting a claimant's testimony must be supported by substantial evidence.  Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).  Failure to articulate reasons for rejecting a claimant's testimony requires that the testimony be accepted as true as a matter of law.  Foote, 67 F.3d at 1562.  The same is true if the articulated reasons for discrediting the testimony are not supported by substantial evidence.  Hale, 831 F.2d at 1012.

While the ALJ must articulate explicit reasons for rejecting a claimant's testimony, he need not make an explicit finding regarding the claimant's credibility as long as the implication is obvious to the reviewing court.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  To be valid, an ALJ's "credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the district court or this Court to conclude that the ALJ considered her medical condition as a whole."  Id.

In reviewing the ALJ's decision, the Court must first determine as a matter of

law whether the ALJ applied the correct legal standard in evaluating Plaintiff's complaints of pain and other subjective symptoms. See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). If the Court finds that the ALJ applied the correct legal standard, the Court must determine whether the ALJ's finding that a claimant does not meet the Mason pain standard is supported by substantial evidence. See id. The Court may not disturb the ALJ's credibility finding if it is clearly articulated and supported by substantial evidence. See Foote, 67 F.3d at 1562.

In this proceeding, the ALJ, in conducting the pain analysis, concluded that Plaintiff did not meet one of the prongs of the test. Specifically, the ALJ found that Plaintiff met the first prong of the pain test when he found that Plaintiff suffered from fibromyalgia, minimal osteoarthritis of the cervical and lumbar spine, a history of migraine headaches, and a right hand injury with borderline carpal tunnel syndrome of the right wrist. (T. 15, 17). The ALJ, however, found that Plaintiff did not meet the second prong of the test. In addressing the pain standard, the ALJ noted that "(i)n making this assessment, the undersigned must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based upon the requirements of 20 CFR §§ 404.1529 and 416.929, and Social Security Ruling 96-7p." (T. 17). While the ALJ articulated no specific finding regarding Plaintiff's credibility, the ALJ, in addressing Plaintiff's complaints of pain, articulated several instances in which Plaintiff's claims of pain conflict with the weight of the objective

7

medical evidence, thus raising the obvious implication before this Court that the Plaintiff's claims of subjective pain were less than credible.  See Dyer, 395 F.3d at 1210.

In articulating the reason for her findings, the ALJ noted that the MRI taken in 1993 when Plaintiff was intermittently suffering from back pain revealed only mild degenerative osteoarthritic changes in the lumbar spine with mild disc bulging and no evidence of herniation.  (T. 15).  The ALJ then contrasted the 1993 MRI with a second MRI taken of Plaintiff's spine in 1998, which revealed minimal degenerative changes in Plaintiff's spine.  (Id.).  Another examination of Plaintiff for pain in her shoulders, hips, knees, and back revealed only mild synovial hypertrophy of the knees.  (T. 16).  The ALJ further found that Plaintiff's pain and symptoms were often properly mitigated by treatment or medications and that, despite Dr. Alton's declaration of total disability in 1998, Plaintiff continued to shovel snow, mow the lawn, and do laundry.  (T.15-16).  Indeed, the ALJ stated that at the time of her application for disability benefits in June of 2001, there was no indication from her physicians' treatment notes of "any significant trauma, event or exacerbation of any condition to indicate a basis of disability."  (T.16).   In reviewing the record, the ALJ noted that a month after filing for disability, Plaintiff complained only of muscle aches after mowing the lawn and reported that she was tolerating her blood pressure medications well.  (T. 16).

These articulated reasons for discounting Plaintiff's allegations of pain and

8

subjective symptoms are fully supported by substantial medical evidence. The Court, therefore, finds that the ALJ applied the proper legal standard when evaluating the credibility of Plaintiff's claims of subjective pain.

**B. WHETHER THE ALJ ERRED IN FAILING TO GIVE GREAT WEIGHT TO THE OPINION OF PLAINTIFF'S TREATING PHYSICIANS, DR. ALTON AND DR. HART.**

Plaintiff further contends that the ALJ erred in crediting the opinion of a State Agency Medical Consultant over that of Plaintiff's treating physicians, Dr. Alton and Dr. Hart. Plaintiff is incorrect.

The controlling body of law on the priority of medical evidence provides that the treating physician's opinion may not be rejected absent good cause to the contrary. Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991). Furthermore, that good cause finding must be set forth expressly on the face of the ALJ's opinion. "Absent a showing of good cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Commissioner." Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988)(citation omitted); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir.1986). The reports of reviewing, non-examining physicians do not constitute substantial evidence on which to base an administrative decision. Spencer on Behalf of Spencer v. Heckler, 765 F.2d 1090, 1093 (11th Cir.1985); Strickland v. Harris, 615 F.2d 1103 (5th Cir.1980); Lamb, 847 F.2d at 703 ("The opinions of non-examining, reviewing physicians, ... when contrary to those of examining physicians are entitled to little weight in a disability case, and

9

standing alone do not constitute substantial evidence."). Further, the good cause required before the treating physicians' opinions may be accorded little weight is not provided by the report of a non-examining physician where it contradicts the report of the treating physician. Johns v. Bowen, 821 F.2d 551 (11th Cir.1987). This priority, known as the "treating physician rule," is borne out of the notion that treating physicians generally have more knowledge of the medical history of their patients and in that capacity are best qualified to assess the nature of the claimed disability. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

An ALJ may, however, discount a treating physician's opinion if it is not supported by medically acceptable . . . techniques and is inconsistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (1998). Furthermore, an ALJ may choose not to rely on a treating physician's report if she articulates good cause to do so. Edwards, 937 F.2d at 583. Good cause to discount a treating physician's report exists if the opinion is wholly conclusory or unsupported by the objective medical evidence in the record. Id. In this case, the ALJ properly articulated that both treating physician's declarations of Plaintiff's disability were unsupported by the objective medical evidence found in the record.

First, the ALJ rejected the claims of Plaintiff's treating physician, Dr. Alton, that Plaintiff was permanently disabled. In late 1998 and in early 1999, Plaintiff's treating physician, Dr. Alton issued four forms declaring that Plaintiff was totally and permanently disabled due to cervical neuralgia and neuritis and right carpal tunnel

syndrome. (T. 310-12, 316). Plaintiff has argued that, because Dr. Alton was Plaintiff's treating physician, his statements should have been accorded greater weight. The ALJ, however, applied the correct legal standard by properly discounting the statements as inconsistent with the objective medical evidence found within Dr. Alton's own records and in the records of Plaintiff's subsequent treating physicians.

The ALJ specifically addressed Dr. Alton's statements that Plaintiff was permanently and totally disabled due to cervical neuralgia and neuritis and right carpal tunnel syndrome. (T. 15, 311-12, 316). The ALJ noted that Dr. Alton's own treatment notes from the same period indicated that Plaintiff was not having any particular problems and had been shoveling snow. (T. 15, 308). Specifically, Dr. Alton's treatment notes from October 22, 1998, state that an EMG test revealed no carpal tunnel symptoms. (T. 318). On November 12, 1998, the date of Dr. Alton's first declaration of Plaintiff's disability, Dr. Alton's own notes showed that a recently conducted MRI found that Plaintiff had suffered only mild degeneration of the lumbar spine. (T. 315-17). Furthermore, a second, unsigned statement of total and permanent disability on December 8, 1998, was issued simultaneously with treatment notes indicating that, although Plaintiff was experiencing some pain, Dr. Alton recommended that Plaintiff begin exercising. (T. 312-13). On January 8, 1999, Dr. Alton noted that Plaintiff's back was better and that although it bothered her when she shoveled snow, medication was effective in relieving the pain. (T.

11

308). On February 25, 1999, Dr. Alton issued a fourth statement of total and permanent disability; however, it is unaccompanied by any treatment notes. (T. 310). In fact, there are no further treatment notes from Dr. Alton in the record until December 3, 1999, when Dr. Alton reported that Plaintiff's back pain "comes and goes." (T. 306). Thus, the ALJ noted that the objective medical evidence, including Dr. Alton's own treatment notes, was inconsistent with Dr. Alton's contemporaneous declarations that Plaintiff was disabled. (T. 15).

In further discrediting Dr. Alton's blanket statements of Plaintiff's disability, the ALJ pointed to Plaintiff's subsequent medical records from the Health Resource Alliance of Pasco County which treated her regularly upon her arrival in Florida. (T. 16). The ALJ noted that while Plaintiff was diagnosed with hypertension and fibromyalgia on February 20, 2001, she was treated with Prozac and later reported feeling better and sleeping well. (T. 16; 273, 277, 281). The ALJ also noted that as of July 20, 2001, though Plaintiff continued to complain of muscle aches after mowing the lawn and doing laundry, she stated that Tylenol was effective in dimming the pain. (T. 16; 266). With the exception of the four statements of permanent disability on which Plaintiff relies, there is no other objective medical evidence in the records of Dr. Alton or the Health Resource Alliance of Pasco County that indicate Plaintiff was permanently and totally disabled from engaging in her past relevant work as either an assembler or sales attendant.

Thus, where the ALJ determined that Dr. Alton's declarations of Plaintiff's total

permanent disability stood in direct contradiction to his own treatment notes, the notes of Plaintiff's subsequent treating physicians, and Plaintiff's simultaneous and subsequent activity levels, the ALJ articulated good cause for discounting Dr. Alton's opinion.

For similar reasons, the Court finds that the ALJ properly discounted the opinion of Plaintiff's treating physician, Dr. Hart. Plaintiff relies on Dr. Hart's "check the box" Mental Residual Functional Capacity Assessment form to prove that Plaintiff was incapable of performing her past relevant work or any other work available within the national economy and to controvert the opinions of the consultative physicians.

Specifically, Dr. Hart opined in the form that Plaintiff was markedly limited in her abilities to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods, and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (T. 412-13). Dr. Hart further indicated that Plaintiff was moderately limited in her abilities to remember locations and work-like procedures, work in coordination with or proximity to others without being distracted by them, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from others, to respond appropriately to changes in the work setting, and to travel in unfamiliar places or use public transportation. (T.

13

412-13). Dr. Hart additionally noted that Plaintiff focused mainly on problems due to chronic pain. (T. 414).

The ALJ, however, noted that Dr. Hart's conclusions were unsupported by a comprehensive review of Plaintiff's treatment for mental conditions in both Michigan with Dr. Alton and in Florida with Dr. Hart. (T. 18). Specifically, the ALJ referred to the absence of evidence in the records of either Dr. Alton or Dr. Hart that Plaintiff had ever required hospitalization or intensive treatment for her mental disorders. (T. 18). The ALJ further noted that Plaintiff had been treated over the years with mild medications for anxiety and depression related to domestic problems, loss of her husband, and financial difficulties, and there was no indication she had not responded to treatment. (T. 18). Indeed, when Plaintiff first complained of depression to Dr. Alton in late 1992 after the death of her husband, Plaintiff reported feeling much better after undergoing treatment with Prozac. (T. 411). In August of 1994, Plaintiff again complained of feeling stressed but later reported that Prozac had made her moods much better. (T. 389). In February of 1996, Plaintiff visited Dr. Alton for complaints of stress from domestic problems and work. (T. 369). After receiving Prozac, Plaintiff again reported feeling much better. (T. 369).

Similarly, when Plaintiff initially entered Dr. Hart's care in October of 2001, she complained of anxiety attacks, nightmares, and depression. (T. 240, 243, 248, 251, 258). On November 7, 2001, however, Plaintiff was given prescriptions for several medications to reduce her depression, psychosis, and anxiety. (T. 239). Nearly one

14

week later, Plaintiff stated to Dr. Hart's nurse that she was feeling much better and responding to her medication. (T. 230). The nurse noted that Plaintiff's attitude was changing and that she seemed much more positive. (T. 230). By November 20, 2001, Plaintiff reported that although she was still having vivid dreams, she no longer had visions of bugs and snakes. (T. 227). Indeed, Plaintiff appeared to be improving prior to January of 2002, when she stated that she was upset she was denied Social Security benefits. (T. 218). During her visits in 2002, Dr. Hart's nurse consistently evaluated Plaintiff as being hygienic, goal directed, relevant, coherent, logical, and organized. (T. 204, 206, 208, 209, 213, 219). It was only on her last visit to the counselor on April 30, 2002, that the Plantiff's thoughts were rated as "tangential" rather than "goal directed, relevant, coherent, logical, organized." (T. 201). The last counselor to see Plaintiff, however, continued to rate her as alert and oriented and having good hygiene. (T. 201).

Additionally, the ALJ referred to Plaintiff's own description of her daily activities, which included visiting and talking with neighbors, playing on the computer daily, working in her yard, doing housework, and maintaining her own finances. (T. 18). Furthermore, the ALJ pointed to the findings of Dr. Barron, who examined Plaintiff on August of 2001. (T. 16). Despite Plaintiff's claims of memory problems, Dr. Hart's counselors rated Plaintiff as having an intact memory on several occasions in 2002. (T. 204, 206, 208). Dr. Barron's further noted that while Plaintiff complained of ". . . memory lapses and deficits, her immediate, recent and remote

15

memory appeared to be intact throughout the evaluation . . . ." (T. 141). Dr. Barron's report appears to comport with the reports of Dr. Hart's counselors, who rated Plaintiff as having an intact memory on several occasions in early 2002. (T. 204, 206, 208).

This Court therefore finds that the ALJ properly articulated reasons for discounting both the opinions of Dr. Alton and Dr. Hart.

## IV.  CONCLUSION

Accordingly, the Court finds that the ALJ did not err in analyzing Plaintiff's subjective claims of pain, nor did she err in discrediting the opinions of Plaintiff's treating physicians Dr. Hart and Dr. Alton when she found both opinions to be inconsistent with the weight of the available objective evidence. The Court therefore AFFIRMS the decision of the Commissioner. The Court ENTERS judgment in favor of the Commissioner and DIRECTS the Clerk to enter judgment pursuant to Rule 58 and to CLOSE this case.

_____
MARY S. SCRIVEN
United States Magistrate Judge

DATED: September 23, 2005